# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 24, 1915.

THOMAS H. BOWLES

VS.

UNITED SURETY COMPANY.

PETITION OF GUSTAV A. SCHLENS.

*Morris Wolf*, of Philadelphia, and *Alfred S. Niles* for the petitioner.

*J. Kemp Bartlett* and *Stuart S. Janney* for the receivers.

HEUISLER, J.—

From the book of minutes of the Executive Committee of the United Surety Company (in evidence in the matter of the petition of Gustav A. Schlens, now under consideration) there is to be found at page 340 the minutes of the special meeting of the said committee held on the 3rd day of February, 1910. An inspection of the same shows that the then president of the company reported at said meeting that "as stated at the last meeting of the Executive Committee, the statement of the company from an insurance point of view showed an impairment of capital to the extent of thirty-nine thousand dollars ($39,000) unless the Munich Re-Insurance claim, advances on contracts and several other disputed items could be allowed in the statement as assets. He stated that he had been in daily conference with the Insurance Commissioner of Maryland, with the representatives of the company at Washington and before the Treasury Department there, making every effort possible to have these items allowed as assets, but that he had been unable to accomplish this, and that the Insurance Commissioner for Maryland, as well as the Treasury Department at Washington, insisted that these items could not be allowed, and that therefore they would not be allowed by the Insurance Commissioners of other States in which the company did business, and that consequently the only statement of the company which the Insurance Commissioner could pass showed an impairment of thirty-nine thousand dollars ($39,000); and that unless this could be made good the company's statement would be disallowed, and the Insurance Commissioner stated that it could not continue to write further business. He also stated that the Insurance Commissioner of Maryland had notified the company that this impairment must be made good by noon of February 4th and that the Commissioner also stated that in his judgment at least seventy-five thousand dollars ($75,000) in cash ought to be put up as a safe margin to make good this impairment and give a reasonable surplus."

Following this report, and after a discussion of the situation confronting the company, a preamble and resolution was adopted and passed as set out in full in said minutes, from which, for the purposes of the Schlens petition aforesaid, a portion of said preamble and resolution is as follows:

"Whereas, in order to save this company from failure and to enable it to preserve its extremely valuable assets and to protect the interests of all the stockholders and policy holders, and to enable the company to continue in business, it is necessary to raise immediately a certain amount of cash; and

"Whereas, Messrs. Ernest J. Knabe, Jr., and William Knabe have offered to purchase all the assets hereinafter set forth for the sum of one hundred thousand dollars, upon terms herein set forth; now, therefore, be it

"Resolved, That this company do sell for one hundred thousand dollars on the terms hereinafter mentioned, to Messrs. Ernest J. Knabe, Jr., and William Knabe, absolutely, its claims for *all premiums over ninety days old * * *; all advances on contracts * * *;* the so-called *'salvage' accounts * * *;* and also the claim of this company known as the Munich Re-Insurance claim, now pending in the Court of Appeals of Maryland, the net value of which is estimated should be at least $88,000, but which amount is in no sense guaranteed, all of which assets are to be sold as aforesaid, of which seventy-five thousand dollars ($75,000) is to be paid in cash this day and the balance to be paid within six months from the date hereof; the deferred payment of twenty-five thousand dollars ($25,000), as aforesaid, to be secured by this company retaining title to the said Munich Re-Insurance claim, *said claim to be assigned finally and absolutely to the said Messrs. Knabe when and as soon as said $25,000 is paid.*"

On the day of the passage of this resolution, February 3rd, 1910, the following assignment was executed by the Messrs. Knabe, the same being filed herein as "Petitioner's Exhibit No. 1";

"Baltimore, Md., Feb. 3, 1910.

"For value received, we and each of us hereby sell, assign, transfer and set over to Messrs. Wolf Brothers &˙Co., each and every right, privilege and interest granted to us and either of us, by the resolution of the Executive Com-

mittee of the Board of Directors of the United Surety Company duly passed this date and this date approved and accepted by us, as collateral security as per agreement of February 2, 1910, a copy of said resolution is attached hereto.

"ERNEST J. KNABE, JR.

"Wm. Knabe, per Ernest J. Knabe, Jr."

Thereafter and some time in the month of March, 1910, the Messrs. Knabe executed two assignments to Gustav A. Schlens, the petitioner, the same being filed herein as Petitioner's Exhibits Nos. 2 and 4. By Exhibit No. 2 they assigned all their right, title, interest and estate in and to certain property and securities, included in which was an item designated as

a. "Assignment of certain assets formerly of the United Surety Company known as 'Advance on Contracts,' 'Salvage' and 'Premiums over ninety days,' and heretofore assigned by the company to Knabes, and by Knabes heretofore assigned to Wolf Brothers & Co."

And by Exhibit No. 4 they assigned "their and each of their equity" in and to certain collaterals held by Wolf Brothers, included in which was an item designated as

b. "Assignment of certain assets formerly of the United Surety Company, known as 'Advance on Contracts,' 'Salvage' and 'Premiums over ninety days,' and heretofore assigned by the company to Knabes and by Knabes heretofore assigned to Wolf Brothers & Co."

The assignment to Wolf Brothers was of all the rights, privileges and interests granted to the Messrs. Knabe by the resolution of February 3, 1910; the two assignments to Gustav A. Schlens included inter alia, *three specifically designated assets*, known as

1. Advance on Contracts.

2. Salvage.

3. Premiums over ninety days.

After the execution of these assignments aforesaid, and at a special meeting of the board of directors of the United Surety Company held on April 29, 1910, the following resolution was adopted:

"Whereas under and by virtue of a resolution of the Executive Committee passed February 3, 1910, as ratified and approved by the Insurance Commissioner of Maryland certain so-called non-admitted assets of the company were sold to Messrs. E. J. Knabe, Jr., and William Knabe upon the terms and conditions in said resolution set forth: and

"Whereas, under the terms of said sale, as aforesaid, there is still due from said purchasers a deferred payment of twenty-five thousand dollars and said purchasers are willing to consent to a modification of said contract of sale as herein set forth, *provided they are released* from the payment of said deferred payment; and

"Whereas, it is believed to be greatly to the advantage of this company to modify said contract, as herein provided; now, therefore, be it

"Resolved, That the said Messrs. Knabe, their personal representatives and assigns, be and they are hereby relieved from the payment of said deferred sum of twenty-five thousand dollars, with interest, the conditions of said release and the modifications of said contract to which Messrs. Knabe and their assigns have assented—and which assent is to be evidenced by such appropriate instruments as counsel of company may require, are as follows:

"First: The management and control of said assets shall be in this company exclusively for the purpose of collecting same and making payments as herein and in said original resolution provided.

"Second: After the payment out of the first proceeds from the collections on all said 'non-admitted assets' of any balance of the seventy-five thousand dollars paid therefor with interest the company shall out of all proceeds from said assets realized over and above such balance of seventy-five thousand dollars with interest, pay one-third to the said Messrs. Knabe, their personal representatives and assigns, and two-thirds to the company. But such one-third going to the Messrs. Knabe shall not exceed $25,000; all over and above that amount to go to the company also."

At the same meeting of April 29, 1910, and recorded in its minutes, in evidence at the hearing of this petition, we find these words:

"Before the above resolution was passed it was discussed generally *and it was stated and understood,* that the

title to the claim of the United Surety Company against the Munich Re-Insurance Company still vested and should continue to vest in the United Surety Company and assurances to the above effect were also given by Mr. Ernest J. Knabe, Jr., and their counsel, Mr. O. F. Hershey, on behalf of the Messrs. Knabe, *who also stated*, upon questioning by Mr. Farber, that the interest referred to in said resolution should only run against the assets and not the company, and that if the assets *should be insufficient* to pay said claim of the Messrs. Knabe, that their interest should cease to run."

The substantial purpose and meaning of the petition filed by Gustav A. Schlens may be ascertained by examination of the verbiage of the *second decretal order* prayed for therein, as follows:

"That all property and assets which *were then subject* of the resolution of the special meeting held on February 3rd, 1910, and of the resolution of the meeting of the Board of Directors of the United Surety Company held on April 29th, 1910—and now in the hands of the receivers appointed in this cause—are the property of your petitioner free and clear of any claims of stockholders or creditors of the United Surety Company, and are held by such receivers as agents for your petitioner, subject to the terms and conditions of the resolutions aforesaid."

In substance the answers filed by the receivers admit the *absolute* sale of three items of non-admitted assets, by the resolution and minutes of February 3, 1910, and the conditional option of purchase as to the item of the "Munich Re-Insurance Claim;" and claim and assert the waiver and release of said option by the minutes and resolution of April 29th, 1910. The petitioner traverses and denies the claim of the receivers as to said "Munich Re-Insurance Claim," and they both appeal to said minutes and resolutions, as to the true intent and meaning thereof, and thereby there has been imposed upon the Court the duty of ascertaining therefrom and from extrinsic evidence if legal and necessary, such true intent and meaning.

For that purpose a great volume of testimony was taken and all such testimony was admitted subject to exception. It seemed impossible to the Court to hold the testimony strictly within non-objectionable legal lines, as to each question and answer, or as to particular fields of enquiry and examination, —because of the necessity of bringing to the attention of the Court the real atmosphere enveloping the transaction—and all the sidelights thereof and gathering up and explaining the many financial threads out of which was finally woven the mantle of difficulty which lay covering the fortunes of the United Surety Company on February 3, 1910, "from an insurance point of view" as stated in the minutes of the meeting held on that date. At the close of the whole testimony no motions to strike out any of said testimony were filed on behalf of the receivers— but several specific motions were formally filed by the petitioner on October 11, 1915.

*The ruling of the Court* on each specific motion as filed is indicated as follows:

Petitioner's motion No. 1 is refused.
Petitioner's motion No. 2 is granted.
Petitioner's motion No. 4 is granted.
Petitioner's motion No. 5 is granted.
Petitioner's motion No. 6 is granted.
Petitioner's motion No. 8 is granted.

As to petitioner's motion No. 3 and petitioner's motion No. 7 and petitioner's motion No. 9 the ruling of the Court is that as to any testimony which records what the witnesses *understood* or *thought* the resolutions and minutes of February 3rd, 1910 and April 29th, 1910, meant or were intended to mean—the motions will be granted and said testimony stricken from the record; and that as to any such testimony as tends to contradict, change, alter or vary the written words of such resolutions and minutes—the motions will be granted and such testimony stricken from the record, but as to any and all of such testimony as tends to illustrate, supplement and explain the said resolutions and minutes and the facts surrounding the parties, and enables the Court to give to the same their true and proper construction and effect, the only and essential reason for this proceeding,—the said motions are refused.

The final findings of the Court, from the pleadings and the evidence, are as follows:

First, that there is no claim or right in Gustav A. Schlens, the petitioner, as to the property and assets of the United Surety Company, now in the hands of the receivers appointed in this cause, and known as the *Munich Re-Insurance claim*.

Second, that there is a claim and right in the petitioner, Gustav A. Schlens, as to the three claims known in this proceeding as "Advances on Contracts;" "Salvage Accounts," and "Premiums over ninety days,"—under and by virtue of their assignment to him by Ernest J. Knabe, Jr., and William Knabe, as disclosed in these proceedings.

Third, that there is and remains, of the collections from said three claims, in the hands of the receivers of the United Surety Company—a sum of money belonging and payable to the said petitioner, as admitted in the sixth paragraph of the Amended Answer filed herein by said receivers, and,

Fourth, that no proper and legal set-off has been shown to exist in said receivers as against the payment to said petitioner of the sum of $11,106.87, which sum is now in the hands of the receivers in cash and in United States Government bonds as set forth in Exhibits 6 and 7, filed with the amended and supplementary answer of the receivers, *except* (a) the item known as premium, on bond, executed by the United Surety Company on behalf of Ernest J. and William Knabe in favor of the Metropolitan Trust Company, which premium amounts to the sum of $1,150.00; and, *except also*, (b) the item of $3,000.00 paid by the United Surety Company to Messrs. Hershey, Farber and Geo. Dobbin Penniman, as and for their fee for services rendered in connection with the said Metropolitan Trust Company Bond; *and except also*, (c) the indebtedness of the said Ernest J. and William Knabe in favor of the United Surety Company, evidenced by their promissory note for the sum of $1,981.16, dated November 3rd, 1910, with interest thereon; and a decree will be accordingly signed declaring and decreeing as to above findings and *Dismissing* the petition as to any claim of the petitioner, in, unto or out of the asset known as the "Munich Re-Insurance Claim," and further ordering and directing that each party to this petition and the proceedings thereunder pay their own costs of same.